UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

J & J SPORTS
PRODUCTIONS, INC.,

                Plaintiff,

v.                                                    No. 15-CV-1554-PP

JUAN CURIEL, d/b/a
EL TORO BRAVO,

                Defendant.

**ORDER GRANTING IN PART MOTION
FOR DEFAULT JUDGMENT (DKT. NO. 8)**

      This case is before the court on plaintiff J & J Sports Productions, Inc.'s ("J & J Sports") motion for default judgment on its complaint against the defendant, Juan Curiel, d/b/a El Toro Bravo. Dkt. No. 8. In its complaint, J & J Sports alleged that it held the rights to distribute via satellite the *Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program,* and that the defendant illegally pirated the broadcast and displayed it in the restaurant in violation of The Communications Act of 1934, 47 U.S.C. §605, <u>et seq.</u> and The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §533 <u>et seq.</u> Dkt. No. 1 at 3.

      The plaintiff filed the motion for default judgment on April 8, 2016, Dkt. No. 8, and the clerk entered default on April 11, 2016. In support of its motion for default judgment, J & J Sports filed the affidavit of Peter S. Balistreri, Dkt. No. 9, and three exhibits: the rate card for the broadcast at issue, the affidavit

1

of J & J Sports' investigator, Michael J. Pfeifer ("Pfeifer"), and documents supporting J & J Sports' claimed attorney's fees and costs, Dkt. Nos. 9-1 through 9-3.

I. **FACTUAL BACKGROUND**

By contract, J & J Sports had the exclusive nationwide television rights to distribute the *Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program*, including undercard bouts and the entire television broadcast, scheduled for September 14, 2013 (the "Broadcast") via closed circuit television and via encrypted satellite signal. Dkt. No. 1 at 3. J & J Sports entered into sub-licensing agreements with commercial entities throughout North America, including entities in Wisconsin, in which it granted those entities limited sub-licensing rights to publicly exhibit the Broadcast to the patrons in their respective establishments. Id.

A little after 10:30 on September 13, 2013, the night of the Broadcast, Pfeifer, an investigator with M. B. Scurto & Associates, entered El Toro Bravo, a bar at 2039 W. National Avenue, Milwaukee, Wisconsin. Dkt. 9-2 at 1. The outside signs, which read "El Toro Bravo" and "Open," both were off, and the restaurant's windows facing the street were obscured from the inside with either paper or cardboard. Id. Pfeifer entered the restaurant, without having to pay a cover charge, and was met by a man. Id. Pfeifer asked if "they" were showing the Mayweather fight. Id. The man replied, "Yes, but this is a private party." Id. Pfeifer saw six people come in and stay. Id. Before turning around and leaving, Pfeifer saw a television set that was tuned to a pay-per-view fight

2

between Danny Garcia and Lucas Mattysse. Id.[1] After leaving the bar, Pfeifer stayed outside to watch for a few minutes, and observed five cars parked on the street and driveway next to the bar. Id. at 2.

The plaintiff alleges that these facts establish that the defendant violated 47 U.S.C. §605 or §553, by intercepting and exhibiting the Broadcast. Id. at 2-3. The plaintiff claims that the defendant's actions were willful and for the purposes of direct or indirect commercial advantage or private financial gain.

## II. ANALYSIS

On January 16, 2016 and January 27, 2016, the plaintiff's process server attempted to serve the plaintiff at 2039 West National Avenue. Dkt. No. 5. He was unsuccessful, and his affidavit states, "Defendant no longer owns the bar per/employees. Defendant no longer lives in upper unit per/current tenant." Id. At a hearing on March 1, 2016, counsel for the plaintiff told the court that he had no other address for the defendant. He also noted that he'd been retained in the case a couple of years after the events in question, making it likely that the defendant had moved. Dkt. No. 6. The plaintiff effectuated service by publication on February 24, March 2 and March 9 of 2016 in the Daily Reporter. Dkt. No. 7. As of the date of the motion for default judgment—just over three months after the summons issued, the defendant had not filed an answer.

When reviewing a motion for default judgment, the court takes "the well-

---

[1] The MGM Grand undercard for the Mayweather/Alvarez fight was between Danny Garcia and Lucas Matthysse of Argentina. www.bbc.com/sport/boxing/24098501.

3

pleaded allegations of the complaint relating to liability . . . as true." Wis. Laborers Health Fund v. KCM Excavation & Landscaping, LLC, No. 13-C-1366, 2014 WL 1347489 at *1 (E.D. Wis. Apr. 3, 2014), quoting Merrill Lynch Mort. Corp. v. Narayan, 908 F.2d 246, 253 (7th Cir. 1990). A default judgment establishes liability. Id., quoting United States v. DiMucci, 879 F.2d 1488, 1497 (7th Cir. 1989). Allegations relating to the "amount of damages suffered," however, "ordinarily are not" taken as true. Narayan, 908 F.2d at 253.

J & J Sports' complaint pleads two claims arising under Title 47 of the United States Code. Section 605 governs the interception of television programming transmitted by wire or radio (including encrypted satellite transmission), while §553 governs the interception of television programming traveling over a cable network. United States v. Norris, 88 F.3d 462, 468–69 (7th Cir. 1996); 47 U.S.C. §§553, 605. Section 605(a) prohibits the unauthorized interception and receipt of radio communications. Section 553 prohibits the unauthorized interception and receipt of cable communications. The complaint alleges that the defendant, without authorization, unlawfully intercepted the encrypted signal that distributed the Broadcast, unscrambled it, and showed the Broadcast at the El Toro Bravo bar for commercial advantage or private financial gain, in violation of either §605 or §553. Dkt. No. 1 at 3.

Based on the facts alleged in the complaint and the exhibits to J & J Sports' motion for default judgment, the court finds that J & J Sports has established a *prima facie* case that the defendant engaged in piracy by

4

Case 2:15-cv-01554-PP   Filed 07/07/16   Page 4 of 10   Document 11

intercepting or receiving the Broadcast and displaying it without authorization.

The court also finds that the plaintiff has established a *prima facie* case that the defendant's piracy was willful. As Judge Griesbach found in J&J Sports Productions, Inc. v. Sangria's Mexican Grill 2 LLC,

> As a result of [the defendant's] default, [the defendant] is deemed to have unlawfully intercepted the program and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *see also Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (" 'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). " 'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 238 (D. Conn. 2007), (quoting *J&J Sports Prods., Inc. v. Drake*, No. 06-246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006)).

2015 WL 5824900 at 2.

The court now must consider the question of damages. Other courts in this district have held that a plaintiff cannot obtain damages under both §605 and §553, because one section prohibits piracy via radio waves and the other prohibits piracy via cable transmission. E.g., J & J Sports Prods., Inc. v. Sangria's Mexican Grill 2 LLC, No. 15-cv-656-WCG, 2015 WL 5824900, at *1 (E.D. Wis. Oct. 6, 2015); J&J Sports Prods, Inc. v. Broadway Baby of Wis., Inc., No. 12-cv-405-RTR, 2013 WL 238850, at *2 (E.D. Wis. Jan. 22, 2013); Joe Hand Promotions, Inc. v. Ewer, No. 90-cv-612-WCG, 2009 WL 326958, at *1

5

(E.D. Wis. Oct. 8, 2009). See also, United States v. Norris, 88 F.3d 462, 468 (7th Cir. 1996) (describing the differences in the targets of the two statutes). But because the defendant did not appear, the plaintiff was not able to conduct discovery to determine whether the defendant intercepted the satellite signal traveling through the air (in violation of §605), or via transmission over a cable network (in violation of §553). The complaint acknowledges that the plaintiff cannot obtain relief for both violations, by asking for relief in the alternative: statutory penalties of up to $110,000 for violating §605(a) (Dkt. No. 1 at 6, ¶(a)), "or" statutory penalties of up to $60,000 for a violation of §553 (Id. at §(c)).

In a case involving similar facts and a similar procedural posture, Judge Griesbach concluded that because the defendant had failed to appear, the plaintiff had appropriately established liability under §605(a) (which has a higher maximum damage provision than §553).² J & J Sports Prods., Inc. v. Sangria's Mexican Grill 2 LLC, 2015 WL 5824900, at *1. This court reaches the same conclusion, and will award damages under §605.

"A claimant entitled to relief under §605 may elect actual or statutory

---

² Section 605(e)(3) gives a court discretion to award statutory damages ranging from $1,000 to $10,000 for "each violation," 47 U.S.C. §605(e)(3)(C)(i)(II), and enhanced damages of up to $100,000 per violation if the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," 47 U.S.C. §605(e)(3)(C)(ii), for a maximum per-violation award of $110,000. Section 553 gives the court discretion to award between $250 and $10,000 in statutory damages for "all violations," 47 U.S.C. §553(c)(3)(A)(ii), and gives the court the ability to impose enhanced damages of up to $50,000 for violations "committed willfully for the purpose of commercial advantage or private financial gain," 47 U.S.C. §553(c)(3)(B), for a maximum award of only $60,000.

damages pursuant to § 605(e)(3)(C)(1)." Id. at *2. The plaintiff has elected statutory damages, as well as asking the court to award attorneys' fees and costs. Dkt. No. 1 at 6. Section 605(e)(3) provides that the court has discretion to award statutory damages ranging from $1,000 to $10,000 for "each violation," 47 U.S.C. §605(e)(3)(C)(i)(II), and gives the court discretion to impose enhanced damages of up to $100,000 per violation if the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," 47 U.S.C. §605(e)(3)(C)(ii). Thus, the court must select an amount of statutory damages between $1,000 and $10,000 for the violation alleged in the complaint, and must decide whether to award enhanced damages, and if so, how much.

Kingvision–Pay Per View v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001), summarized some of the different approaches courts have used to award damages:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. See, e.g., [Time Warner Cable v.] Googies Luncheonette, Inc., 77 F. Supp. 2d [485], 489 [S.D.N.Y. 1999] (listing cases); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). Some courts have awarded a flat sum for each violation. See, e.g., Googies Luncheonette, Inc., 77 F. Supp. 2d at 489–90 (listing cases); Taco Rapido Rest., 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. See, e.g., Googies Luncheonette, Inc., 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y. 1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

7

In this case, the plaintiff filed its rate card for the Broadcast. Dkt. No. 9-1. The rate card lists the amount of money a commercial establishment would have needed to pay in order to show the Broadcast, depending on the number of patrons in the audience. The rate card indicates that the cost of showing the fight was a non-refundable minimum guarantee of $2,200, plus $20 for each person over one hundred people. So an establishment with a capacity of 0-100 persons would be charged the non-refundable, minimum guarantee fee of $2,200 to show the Broadcast; an establishment holding up to 200 people would have to pay $4,200, and so on. Id. Neither the complaint nor Pfeifer's affidavit indicate how many people the El Toro Bravo bar could seat. Without evidence that the bar could seat over one hundred people, and without any evidence supporting any kind of flat, per-violation award, the court finds that the rate card supports an award of the $2,200 minimum fee.

By seeking damages of up to $110,000, the plaintiff also asks the court to award enhanced damages of up to $100,000, but it provides no support for this request. In order to ascertain an enhanced damages figure, courts have considered factors such as: (1) the number of violations; (2) the defendant's unlawful monetary gains; (3) the plaintiff's significant actual damages; (4) whether the defendant advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. See Ewer, 2009 WL 3269658, at *1 (citing Joe Hands Promotions, Inc. v. Kaczmar, No. 08-cv-2910, 2008 WL 4776365, at *2 (N.D. Ill. Oct. 29, 2008)). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an

8

award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." Id. (citing Kaczmar, 2008 WL 4776365, at *2).

There is no evidence in the record that the defendant previously had violated §605. On the night of the violation detailed in Pfeifer's affidavit, the defendant claimed to be hosting a private party, and did not impose a cover charge to enter the restaurant. The exterior signs of the restaurant, including its "Open" sign, were turned off. Pfeifer observed only six people enter the restaurant, and he saw only five cars parked in the vicinity. There is no evidence that the defendant advertised that he would be displaying the Broadcast, and according to his affidavit, Pfeifer observed only one screen that was displaying the Broadcast. Thus, the only rationale supporting the imposition of enhanced damages is that of deterrence. Failure to award some measure of enhanced damages would not have such a deterrent effect; accordingly, the court will impose an additional $4,400 in enhanced damages.

Finally, the plaintiff seeks an award of attorney's fees in the amount of $1,250 (reflecting an hourly rate of $250 for five hours of attorney time) and costs in the amount of $620. Under §605(e)(3)(B), if the court finds a violation of the section, the award of attorney's fees and costs is mandatory. The court has reviewed the supporting documentation and concludes that the claimed attorney's fees and costs are reasonable. Based on the information contained in attorney Balistreri's affidavit (Dkt. No. 9), the court awards attorney's fees in the amount of $1,250 plus $620 in costs for the violation of §605.

### III. CONCLUSION

For the reasons explained in this order, J & J Sports' motion for default judgment against the defendant is **GRANTED IN PART** (Dkt. No. 8) to the extent that the court awards damages for the violation of §605, together with attorney's fees and costs, and **DENIED** in all other respects. The defendants, jointly and severally, must pay J & J Sports the total amount of **$8,470**, together with interest thereon at the rate provided by law, for the violation of §605. The Clerk of Court will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 7th day of July, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge